# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
August 26, 2010

Lyle W. Cayce
Clerk

United States District Court
Southern District of Texas
FILED
SEP 2 3 2010
David J. Bradley, Clerk of Court

No. 09-20534

LILLIE ANN LOPEZ; JANA YOUNG,

                Plaintiffs–Appellants

v.

CITY OF HOUSTON; PETER BROWN; SUE LOVELL; MELISSA NORIEGA; RONALD GREEN; JOLANDA JONES; TONI LAWRENCE; JARVIS JOHNSON; ANNE CLUTTERBUCK; WANDA ADAMS; MIKE SULLIVAN; M. J. KAHN; PAM HOLM; JAMES G. RODRIGUEZ; BILL WHITE; ANNISE D. PARKER,

                Defendants–Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before GARWOOD, SMITH, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

      Appellants, a group of minority voters residing in Houston, Texas ("the City") allege constitutional and statutory violations stemming from changes in the way the City calculates its population for purposes of redistricting and adding city council seats. The district court dismissed the case as frivolous. Because we hold that appellants' claims are not justiciable, we affirm.

No. 09-20534

## FACTS AND PROCEEDINGS

As amended in 1979, Article V, § 2 of the City's charter provides that two additional single-member city council districts are to be created if the council determines, pursuant to the charter, that the City's population is greater than or equal to 2.1 million people. Article V, § 3 provides that, in each election year, the City Council must investigate and determine the population in each of the districts "based upon the best available data, including, but not limited to, the most recent federal census" for the purpose of determining whether the districts are out of proportion. In February 2009, before the 2009 city elections, the council determined that the population was 1,953,631 for the purposes of Article V, § 3. This figure represented the City's population as reported by the most recent federal census, taken in 2000.

In 2004, Article VI-a of the charter was amended to add § 7, which limits the growth of the City's annual revenue based in part on the rate of change in the City's population. This rate of change is determined by using annual population data "obtained from the State of Texas's State Data Center" and is "adjusted every ten years to the City's official census per the United States Department of Commerce—Bureau of the Census." The State Data Center estimated the population of Houston to be 2,139,408 as of July 1, 2007. While this was not a determination of the population pursuant to Article V, § 3, appellants claim that it should be considered a population determination made "pursuant to the charter," triggering the required addition of two council seats.

Appellants filed suit arguing that the council's February 2009 determination of the City's population violated §§ 2 and 5 of the Voting Rights Act, 42 U.S.C. § 1973c *et seq.*, the Equal Protection Clause of the Fourteenth Amendment, and the Fifteenth Amendment. They sought an order enjoining the November 2009 elections until the City Council added two seats and redistricted. The City filed a motion to dismiss for failure to state a claim, and appellants

2

filed a first amended complaint. The City then supplemented its motion to dismiss, which the district court granted.[1] The district court later denied appellants' motion to alter the judgment and another motion to file a proposed second amended complaint. While the case was pending the election was held, without any increase in the number of council seats. Appellants timely appealed.

## STANDARD OF REVIEW

We review a district court's grant of a motion to dismiss for failure to state a claim *de novo*. *See St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000). Jurisdictional issues such as mootness and ripeness are legal questions for which review is *de novo*. *See Bayou Liberty Ass'n v. U.S. Army Corps of Eng'rs*, 217 F.3d 393, 396 (5th Cir. 2000) (citing *Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir. 1989)); *Groome Res. Ltd. v. Parish of Jefferson*, 234 F.3d 192, 198-99 (5th Cir. 2000).

## DISCUSSION

As the basis for their Voting Rights Act claims, appellants assert that the City Council has adopted two changes with respect to voting without obtaining the required "preclearance." The first is that, under Article V, § 3 of the charter, *any* determination of the City's population—even one made under Article VI-a, which did not exist at the time Article V, § 3 was written—triggers the two-member increase described in Article V, § 2. Appellants assert that the City Council has instituted a new policy to permit only determinations made under Article V, § 3 to trigger the increase. The second alleged change is that, formerly,

---

[1] Under the Voting Rights Act, a change in a "standard, practice, or procedure with respect to voting" must be "pre-cleared" by either declaratory judgment by the U.S. District Court for the District of Columbia or by submitting the proposed changes to the U.S. Attorney General. Actions under § 5 of the Voting Rights Act are heard by a three-judge court in accordance with 28 U.S.C. § 2284, whose decisions are immediately appealable to the Supreme Court. *See* 42 U.S.C. § 1973c(a). However, a district court judge may dismiss a claim prior to referring it to a three-judge court if the claim is "'wholly insubstantial' and completely without merit." *LULAC v. Texas*, 113 F.3d 53, 55 (5th Cir. 1997) (per curiam).

the City used the "best available data" to determine population, including but not limited to the decennial census. Appellants claim that this practice has changed and that now the City Council only looks at the federal census figures. They argue that this second change means that even though the charter provides for possible redistricting every two years, practically it can only happen every ten years when new census data becomes available. Appellants argue that these are changes in a "standard, practice, or procedure with respect to voting" within the meaning of § 5 of the Voting Rights Act and thus require preclearance. Without conceding that it has changed any practice or procedure related to voting, the City argues that appellants' claims are not justiciable because they have been rendered moot by the passing of the 2009 city council election.

Appellants contend that their claims are not moot, even though the 2009 election has passed, for two reasons. First, because they seek invalidation of the 2009 election and a new election after the addition of two new city council seats, appellants argue that there is a viable remedy for their injury. Second, they argue that the failure to use the "best available data" in addition to census data precludes mid-decade redistricting, which constitutes an ongoing injury regardless of whether the 2009 election has occurred. We conclude that appellants' claims are not justiciable, because they are, respectively, moot and not ripe.

"[T]o qualify as a case for federal court adjudication, a case or controversy must exist at all stages of the litigation, not just at the time the suit was filed." *Bayou Liberty Ass'n*, 217 F.3d at 396. Invalidation of a past election can, in some instances, be a viable remedy that will save a claim from mootness even if the election has passed. *See NAACP v. Hampton Cnty. Election Comm'n*, 470 U.S. 166, 181-82 (1985) (permitting a claim to proceed when plaintiffs sought election invalidation). But such invalidation is an extraordinary remedy that can only be

employed in exceptional circumstances, usually when there has been egregious defiance of the Voting Rights Act on the part of the covered entity. *See Watkins v. Mabus*, 502 U.S. 954 (1991) (mem.), *aff'g in part, vacating as moot in part* 771 F. Supp. 789 (S.D. Miss. 1991); *see also Harris*, 151 F.3d at 189-91 (dismissing as moot a voting law case in which the complained-of election had passed); 25 AM. JUR. 2D *Elections* § 133 (2010) (noting that invalidation of an election is a "drastic remedy" that should only be employed where the government action "constitutes deliberate defiance" of the Act). Appellants have made no claim of the kind of egregious or invidious discrimination that would make invalidation of the 2009 election an appropriate remedy.

Nor is this claim saved from mootness because it is "capable of repetition, yet evading review." This exception to the mootness doctrine has two prongs: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). Under the second prong, the party invoking jurisdiction must show a "demonstrated probability" or "reasonable expectation," not merely a "theoretical possibility," that it will be subject to the same government action. *Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5th Cir. 2010). The appellants bear the burden of proving both prongs. *See id.*; *Davis v. FEC*, ___ U.S. ___, 128 S. Ct. 2759, 2769 (2008).

Here, the City has not formed a policy that it will follow in future similar circumstances that are likely to repeat. Rather, in this case, the decennial U.S. Census will report the population of the City before the next city elections on November 8, 2011. *See* 13 U.S.C. § 141(a) (requiring census figures to be released no later than April 1, 2011). At that time, one of three things will occur. One, the census may determine that the City's population is less than 2.1 million, in which case the City will determine based on information that is definitively the

"best available" that the charter does not require the addition of two new council seats.[2] Two, the census may report that the population has reached 2.1 million and the City will add the new seats pursuant to the charter, in which case the appeal will be moot because the relief requested will be provided. Three, the census might report that the population has reached 2.1 million and the City will choose to violate its own charter and not add the seats, in which case the appellants will have standing to challenge that decision. However, the City pledged in its briefs before the district court, and before this court, that it intended to add the seats should the 2010 Census determine that the population reached 2.1 million. In any case, merely showing that the government will "have an opportunity to act in the same allegedly unlawful manner in the future" is not enough to satisfy the second prong of the exception without a reasonable expectation that the government *will* act in that manner. *Libertarian Party*, 595 F.3d at 217. Appellants have not shown that there is a reasonable expectation that the City will choose to violate its charter. Any claims based on the City's failure to redistrict or add new council seats prior to the 2009 election are moot.

Likewise, appellants' claims that mid-decade redistricting will not occur because of the City's new decision to use old census data, rather than the "best available data," in determining its population, are not yet ripe. Ripeness is a

---

[2] This outcome seems unlikely. Both the Census Bureau and the State of Texas estimate that Houston's population passed 2.1 million as of 2007. At oral argument, the City conceded that it was likely that the 2010 Census would show that Houston's present population is well above 2.1 million. It might be argued that even if the 2010 Census finds that the City's population does not exceed 2.1 million, the City could and should still use other data to "check" the Census for an undercount, which would make the claims not moot. This would mean construing the charter as requiring the City to use other data to make a determination of its population even in the face of a recent, definitive determination of that population by the Census. This interpretation of the charter strains credulity, and in any event appellants did not make this argument. Further, there is still no "reasonable expectation" that the appellants will be subject to the same government action, because both parties seem to agree that the 2010 Census is almost certain to determine that Houston's population is now more than 2.1 million.

component of subject matter jurisdiction, because a court has no power to decide disputes that are not yet justiciable. *See Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (per curiam). "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003). To determine whether claims are ripe, we evaluate (1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining court consideration. *Texas v. United States*, 497 F.3d 491, 498 (5th Cir. 2007), *cert. denied*, 129 S. Ct. 32 (2008). These prongs must be balanced, *Am. Forest & Paper Ass'n v. EPA*, 137 F.3d 291, 296 (5th Cir. 1998), and "[a] case is generally ripe if any remaining questions are purely legal ones." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987). "[E]ven where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness." *Cent. & S.W. Servs., Inc. v. EPA*, 220 F.3d 683, 690 (5th Cir. 2000). In this sense, the doctrines of ripeness and standing "often overlap in practice, particularly in an examination of whether a plaintiff has suffered a concrete injury." *Texas*, 497 F.3d at 496. If the purported injury is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all," the claim is not ripe for adjudication. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985) (quotation omitted).

We hold that the issues presented by appellants are not yet ripe for judicial review. As noted above, new census figures will be available prior to the next election, giving the City the opportunity to redraw and rebalance council districts based on data that is the "best available," which means that appellants will suffer no hardship because we decline to consider their claims at this time. At some point in the future, if the City persists in relying on census data that has become outdated and refuses to redraw districts mid-decade, appellants may be able to allege a non-frivolous claim that is ripe, and because it is capable of

repetition, yet evading review, also escapes the trap of becoming moot after each passing city council election. But this is an event that "may not occur as anticipated, or indeed may not occur at all," *id.*, which means that the claim is merely abstract or hypothetical, and thus too speculative to be fit for judicial review at this time.

## CONCLUSION

The judgment of the district court is AFFIRMED.